### 5365.  BUTTS *v.* WHITAKER, administrator.

1. The reviewing court will not disturb a verdict resting upon evidence sufficient to sustain the necessary averments in behalf of the successful party, even though the evidence be somewhat weak and unsatisfactory.

2. One can not be heard to testify in his own behalf concerning transactions between himself and a deceased person, in a suit instituted by the administrator of the decedent.

3. There was evidence authorizing the instructions to the jury as to the essentials of a gift, and also as to the presumption of a gift, arising from the delivery of personal property by a parent into the exclusive possession of a child living separate from the parent.

DECIDED JUNE 22, 1914.

Appeal; from Baldwin superior court—Judge James B. Park. November 5, 1913.

In January, 1910, Leonard Butts Jr. was stricken with a fatal sickness, and, realizing the gravity of his condition, and seeking to provide in the best possible manner for the welfare and comfort of his young wife, who was about to become a mother, he sent her to the home of her parents, to remain until after her accouchment, and himself removed to his paternal home. By his direction, all the personal property in his possession, including certain live stock, vehicles, provisions, provender, etc., was conveyed at the same time to his father's home.

About two weeks after the wife's return to her father's house, she was confined, and when she regained sufficient strength, some six weeks thereafter, she rejoined her dying husband, and she remained with him until the end, three weeks later. J. C. Whitaker, the administrator of his estate, instituted an action of trover against Leonard Butts Sr., the decedent's father, to recover the property removed as aforesaid. The father by his plea denied that the son was the owner of the property at the time of his death, and denied that there was so much of the property as alleged in the petition, and set up further that the portion in his possession "comprised all the property that the said Leonard Butts Jr. [the decedent] had, and that the same was given to this defendant by the said Leonard Butts Jr., in full settlement and satisfaction of all the claims and demands that he, the said defendant, had against him, the said Leonard Butts Jr., and this defendant in this connection. avers that the said property was not sufficient in value to liquidate and settle all the demands he had against" the decedent. The defendant further set up that only a portion of the property sued for was in existence at the time the suit was brought; that when his son, the decedent, became disabled by sickness, the defendant brought him to his own house and there maintained and kept him, and provided medical treatment for him until he died, and that the decedent, being indebted to the defendant, turned over all his property to the defendant in full satisfaction of the indebtedness,

including a debt for rent, supplies, and provisions furnished to him in 1909 as a tenant of the defendant for that year.

On the trial the plaintiff elected to take a money verdict, and the jury returned a verdict against the defendant for the full value claimed, without hire, to wit, $475. The defendant made a motion for a new trial, which was overruled, and the case was brought to this court for review.

*Joseph E. Pottle,* for plaintiff in error.

*Hines & Vinson, R. H. Lewis,* contra.

WADE, J. (After stating the foregoing facts.) 1. The plaintiff in error insists that the verdict was contrary to the evidence, and without evidence to support it. The evidence as to the decedent's ownership of the property and as to the origin of his title thereto, was conflicting and somewhat unsatisfactory, but it was nevertheless sufficient to convince the jury that the plaintiff's demand was just; and since it supported the material and necessary allegations in the petition and was admissible under the law, and since the trial judge in his discretion allowed the verdict to stand, the evidence is sufficient to uphold the verdict here. There was testimony from the widow of the decedent that one of the two dark bay mules was her "husband's individually. He said his father gave it to him when he and I first married. He had the mule at that time. . . The other mule was in my husband's possession." She stated further that her husband swapped a mule for a gray mare, which mare he had when they were married, and that the horse sued for was the colt of the gray mare; that he bought the top buggy, the wagon, and the cow sued for, and that the cottonseed, corn, and fodder were raised by them. There was proof of values by her, aggregating more than the amount of the verdict returned; and she testified that all of this property was at the house where they lived, up to the time of his removal to his father's house, and that during their entire married life all of it, except the crops raised in 1909, was in her husband's possession, and he claimed ownership thereof, and no one else exercised control or claimed ownership over it. She testified also that her husband was renting land from his father and owed his father some amount, both for rent and supplies, but, according to his statement to her, not much; and that he told her his father had given him one of the mules, and his father told her the same thing himself; that she never heard

of any claim by the defendant to the property sued for until two days after her husband's death, when the defendant told her that all the property was his own except the mule which he had given her husband; that he did not say her husband had "given him back title to the property;" that her husband while sick delivered his trunk key to her, and advised her to hold it, and after his death she found certain papers in the trunk. The plaintiff testified, without objection, that he was administrator of the estate of Leonard Butts Jr., and that there were no assets in his hands to meet a judgment of the court of ordinary (which we may assume was a judgment for a year's support for the widow), and that the object of the suit was to recover property to meet the indebtedness of the estate. There was testimony for the plaintiff as to certain cotton transactions, which we need not consider for our present purpose. One Seay, sworn for the plaintiff, testified to a certain conversation between himself and the decedent about a year and a half before the death of the latter, in which the decedent said in the presence of the defendant, who neither confirmed nor denied the assertion, that his father had bought one of the mules for him, and that the gray mare (the mother of the horse sued for) he had bought from his father, and that he still owed some of the purchase-price; that he did not say whom he bought the other mule from. The defendant himself testified that his son was living apart from him and was working for himself, making his own contracts, with the defendant's knowledge and consent, and that one of the mules sued for was in the possession of the son more than a year before his death, as was also the mare, which was swapped for another mule thereafter. The defendant's wife (the stepmother of the decedent) admitted that her husband told her he bought one of the mules for the decedent, and she heard her husband say he was going to give this mule to the decedent. A son of the defendant testified that, when removing the property for his brother to his father's house, all he heard his brother say was that "he wanted somebody to take care of this property of his." There was other testimony from the defendant and his witnesses, more favorable to his contentions, but that testimony the jury evidently disregarded, and only such portions of the testimony for the defendant as seems to corroborate or sustain the plaintiff's case is herein referred to.

2. In one of the grounds of the motion for a new trial it is contended that the court erred in ruling out the testimony of the defendant that he "had never sold one of the mules sued for or given him to his son," and in another ground it is insisted that the court erred in refusing to permit the defendant to answer the following question: "Where did he (referring to the decedent) get his supplies in 1909?" counsel for the movant stating, when the question was propounded, that he expected the witness to answer that the decedent obtained from the defendant his supplies to make the crop of 1909 on the premises rented from the defendant; and insisting that this was relevant and material, for the reason that one of the contentions of the defendant was that the decedent at the time of his death was largely indebted to the defendant for advances made to him during the year 1909, to make the crop of that year, and that in part payment for the advances the decedent delivered to the defendant the property sued for. These two grounds may be considered together, since they raise an identical question. The testimony ruled out in the one instance, and the question which the judge refused to allow the defendant to answer in the other, both directly involved transactions between the decedent and the surviving party, who sought to testify in regard thereto. His testimony, to the effect that he had never sold or given to his son one of the mules in question, necessarily involved a "transaction" between himself and his deceased son, and, if allowed, would have tended to set up and sustain title to property, which, under other testimony in the case, the son was in possession of and claimed at the time of his death. The testimony which the defendant sought to give, as to who furnished supplies to his deceased son in the year 1909, which counsel avow was intended to show that the son was largely indebted to the defendant therefor, and to sustain the defendant's contention that the property in question was delivered to him in settlement of such indebtedness, would have tended to set up and establish in behalf of the witness a charge against the estate of the decedent, and would also have related specifically to a "transaction" between the decedent and himself touching the transfer of the title to the property and adversely affecting the decedent's estate. Section 5858 (1) of the Civil Code provides: "Where any suit is instituted or defended by . . the personal representative of a de-

ceased person, the opposite party shall not be admitted to testify in his own behalf against . . the deceased person, as to transactions or communications with such . . deceased person." Counsel for the plaintiff in error argues that a strict application of this provision of the statute might work injustice, in case of the death of one in possession of personal property delivered to him by the owner, without a sale or a writing; as thereby the mouth of the survivor would be absolutely closed, and he might lose his property entirely. Of course, the obvious safeguard against such an occurrence would be to commit the agreement, whether of sale or loan, to writing, and the failure to take proper and ordinary business precautions, whereby one guilty of laches suffers from the application of a law which he is presumed to know, can not be urged as a reason why this court should attempt to do that which does not properly rest in its power, and, by forced construction or strained interpretation, enlarge or restrict the obvious meaning and purpose of a plain and unambiguous statute, when the words employed by the legislature do not so warrant. As suggested by able counsel, the rule may sometimes work a hardship, and be responsible for manifest injustice, but an enlargement of the rule, which would permit the unscrupulous to assert claims against deceased persons based upon such testimony alone, would obviously bring about wrongs immeasurable. Suffice it to say, ita lex scripta est. A literal construction and rigid enforcement of this statute may sometimes work injustice even where reasonable precautions have been taken, since no human device or forethought can securely guard against all possible contingencies, but how much greater the possibilities of wrong from the unscrupulous and greedy if a survivor were permitted, by a free or liberal interpretation of the statute, to support or advance to any degree by his own testimony demands against an estate, arising from alleged transactions between himself and the deceased? If the barrier erected to protect the honest creditors and legal heirs of those deceased be impaired to the slightest extent, by liberal construction intended to meet special conditions in particular cases, or to do apparently individual justice, how soon would the entire bulwark be so far demolished as to leave all estates of inheritance naked to assault; and how many of such estates would prove finally solvent, if conscientious scruples alone should be relied upon to limit and determine the

testimony of survivors touching transactions with and against the interest of the unreplying dead?

3. The third and fourth grounds of the amendment to the motion for a new trial may likewise be considered together. In the third ground it is complained that the court erred in charging the jury as follows: "To constitute a valid gift, there must be the intention to give by the donor, acceptance by the donee, and delivery of the article given, or some act accepted by law in lieu thereof [Civil Code, § 4144] ; that is, if any or all of this property originally belonged to the father, to constitute a valid gift from the father to the son there must be the intention by the father to give the property, there must be acceptance by the son, and delivery of the article given, or some act accepted by the law in lieu thereof." It is contended that there was no evidence tending to show a gift of any property by the defendant to the decedent. In the fourth ground it is complained that the court erred in charging the jury in reference to the delivery of personal property into the exclusive possession of a child living separate and apart from a parent, and as to the presumption of a gift created thereby (Civil Code, § 4150) ; and it is insisted that this charge was erroneous because there was no evidence to authorize it. By reference to those portions of the testimony which we·have quoted, it will be seen that neither of these exceptions is meritorious, since a charge as to what would constitute a valid gift, and as to what would create the presumption of a gift from a parent to a child, was clearly required by the evidence. It appears, from the testimony of the decedent's widow, that both he and his father stated to her that the father had *given* one of the mules in question to him; and she further testified that the defendant told her after her husband's death "that all the property was his except the mule,—that he·*gave* my husband the mule." The defendant's wife testified that she heard her husband say he was going to *give* one of the mules to the decedent; and Seay testified that he heard the decedent say, in the presence of his father, about a year and a half before his death, that his father bought one of the mules for him. The charge as to what would constitute a·valid gift perhaps might have been authorized by the allegation in the defendant's plea to the effect that his son had *given* him certain property in part satisfaction of a debt, though possibly the word "given," as used in that connec-

tion, was intended to convey the idea that the son had delivered or transferred the property in question to the father for this purpose; but at all events, the charge was required by the evidence recited above, which tends to establish, and did establish to the satisfaction of the jury, the fact that the father had given one of the mules. to .his son. The charge as to the presumption of a gift was required in view of the undisputed facts that the son was in possession of some property which had formerly belonged to and had been delivered to him by the father, and was apparently asserting exclusive ownership over it under all the conditions named in the statute.

The trial judge did not err in overruling the motion for a new trial. *Judgment affirmed. Roan, J., absent.*